IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| B.K.,<br><br>        Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF THE<br>SOCIAL SECURITY<br>ADMINISTRATION,<br><br>        Defendant. | Civil No. 21-5732 (RMB)<br><br>OPINION |

**BUMB**, U.S. District Judge:

This matter comes before the Court upon an appeal by Plaintiff from a denial of social security disability benefits. For the reasons set forth below, the Court shall affirm the decision of the Administrative Law Judge ("ALJ").

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

The Court recites herein only the facts that are necessary to its determination on appeal. Plaintiff, whose date of birth is March 23, 1972, was 44 years old on his alleged onset date of December 20, 2016. [Docket No. 11 (referred to hereafter as "Plaintiff's Brief"), at 2 (*citing* Docket No. 6 (referred to hereafter as the "Administrative Record" or "AR"), at 69).] Plaintiff is a high school graduate who can communicate in English and has past relevant work experience as a Concrete Supervisor. [*Id.* (*citing* AR 24, 213).] In his initial application for disability benefits,

1

Plaintiff indicated that his claim was due to the following impairments: thoracic disc herniations (T5, 6, 7), lumbar disc herniations (L4, 5), and depression. [AR at 69.]

Plaintiff's claim for disability benefits was initially denied on February 8, 2018, and upon reconsideration on May 19, 2018. [Plaintiff's Brief at 1.] Plaintiff appeared at the Pennsauken Office of Hearings Operations in Pennsauken Township, New Jersey, for both an initial hearing on November 18, 2019, and a supplemental hearing on March 5, 2020, each before the Honorable Trina Moore, an Administrative Law Judge ("ALJ"). [*Id.*] The initial hearing was also attended by an attorney for Plaintiff, Santina Pescatore, as well as Louis Szollosy, an impartial vocational expert who testified. [AR at 12.] At the supplemental hearing, Pat Green, another impartial vocational expert, appeared and testified. [*Id.*] On March 23, 2020, the ALJ issued an unfavorable decision, denying Plaintiff's application for disability benefits. [AR at 9.] Plaintiff appealed the ALJ's decision internally to the Appeals Council, but his appeal was denied on January 12, 2021. [*Id.* at 1.] Then, on March 18, 2021, Plaintiff commenced the present action, requesting judicial review of the Commissioner's final decision and invoking the jurisdiction of this Court pursuant to 42 U.S.C. § 405(g). [Docket No. 1.]

## II.     THE ALJ'S DECISION

The ALJ found that Plaintiff was not disabled for purposes of disability insurance benefits because she determined that Plaintiff was capable of making an adjustment to work other than his past relevant work. [AR at 25–26.] At step one of

the five-step, sequential analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of disability. [*Id.* at 15.] Moving on to step two, the ALJ determined that Plaintiff suffers from two "severe" physical impairments—degenerative disc disease (lumbar and cervical spine) and thoracic fracture. [*Id.*] Also at step two, the ALJ discussed why other of Plaintiff's alleged impairments were not "severe" for purposes of determining social security benefits, including gastroesophageal reflux disease (GERD), hernia, status post tibia/fibular fracture, status post right-hand fracture, obesity, attention deficit-hyperactivity disorder (ADHD), and depressive disorder. Regarding Plaintiff's alleged mental health impairments of ADHD and depression, the ALJ considered each of the four "paragraph B" criteria at step two, finding that Plaintiff had only a mild limitation in two of the four broad areas of functioning (understanding, remembering, or applying information, as well as concentrating, persisting, or maintaining pace) and no limitation in the other two broad areas of functioning (interacting with others and adapting or managing oneself). [*Id.* at 15–18.]

At step three, the ALJ found that none of Plaintiff's impairments, or any combination thereof, met or medically equaled the severity of an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id.* at 18.] Before turning to step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that he could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but could never climb ladders, ropes, or

scaffolds. [*Id.* at 19.]

At step four, the ALJ determined that Plaintiff does not have the RFC to perform his past relevant work as a Concrete Supervisor, taking into consideration the testimony of vocational expert Pat Green. However, Mr. Green also testified that Plaintiff would be able to perform the requirements of other representative occupations based on the ALJ's RFC assessment, including as a Hand Packager, Ticket Seller, and Assembler-Small Products, and that a significant number of such occupations exists in the national economy. [*Id.* at 24–25.] Thus, the ALJ ultimately concluded at the final step of the five-step, sequential analysis that Plaintiff was not under a "disability," as such term is defined in the Social Security Act, since his alleged onset date. [*Id.* at 26.]

### III.   STANDARD OF REVIEW

When reviewing a final decision of an ALJ regarding disability benefits, the Court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." 42 U.S.C. § 405(g); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (*citing Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). "Substantial evidence" means "more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer*, 186 F.3d at 427 (citations omitted). In addition to the "substantial evidence" inquiry, the Court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v.*

*Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *see also Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. *Sykes*, 228 F.3d at 262 (*citing Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(a)(3)(A).  The Act further states the following:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 1382(c)(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's alleged disability status for purposes of social security benefits, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i-v).  The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe

medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201-02 (3d Cir. 2019) (alterations in original).

## IV. <u>ANALYSIS</u>

On appeal, Plaintiff asserts that three of the ALJ's findings, in particular, were not supported by substantial evidence: (1) the ALJ's finding that the medical opinion

6

of Dr. H. Michael Jung is not persuasive; (2) the limitations in the ALJ's RFC assessment in light of Plaintiff's "severe" impairments; and (3) the ALJ's consideration of Plaintiff's alleged mental health impairments and other "non-severe" impairments. The Court considers each of Plaintiff's arguments in turn.

### A. Dr. Jung's Medical Opinion

Plaintiff's first argument is that the ALJ erred in finding the medical opinion of his primary care physician, Dr. H. Michael Jung, not persuasive. [Plaintiff's Brief at 13–17.] More specifically, Plaintiff contends that the ALJ should have weighed more heavily and incorporated in her decision one of Dr. Jung's findings, in particular—that it is reasonable for Plaintiff to need to lie down or recline for 1-2 hours during the day on a daily basis—because the "two vocational experts testified that if a person were continuously 10% off task, including needing to rest for 1-2 hours a day . . . [it] could preclude competitive work" altogether. [*Id.* at 17.]

Since Plaintiff applied for social security benefits after March 27, 2017, the new regulatory framework governing the ALJ's evaluation of medical opinions is applicable, under which, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," including Plaintiff's own medical sources such as Dr. Jung. 20 C.F.R. § 1520c(a). Instead, the ALJ is to consider the persuasiveness of a medical opinion, and the most important factors to consider are supportability and consistency. *Id.* at §404.1520c(b)(2). With respect to supportability, "[t]he more

relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)," the more persuasive such opinion will be. *Id.* at §404.1520c(c)(1). In terms of consistency, a medical opinion will be more persuasive when it is consistent "with the evidence from other medical sources and nonmedical sources in the claims." *Id.* at §404.1520c(c)(2).

      In her decision, the ALJ expressly found that Dr. Jung "supported his opinion *merely* by noting diagnoses, alleged sign/symptoms, potential medication side effects, forms of treatment, and that the claimant had 'abnormal MRIs,'" such that Dr. Jung "failed to offer an explanation with an adequate citation to objective findings in support of his opinion." [AR at 23 (emphasis added).] Indeed, Dr. Jung's medical opinion consists of a three-page form, and in response to Question 6 on such form—which asks for a description of the clinical findings and/or objective signs that support Plaintiff's impairments—Dr. Jung simply wrote that Plaintiff "has abnormal MRIS, constant pain." [AR at 975.] Nowhere in his medical opinion does Dr. Jung reference any specific MRI in support of his findings or specify what degree of pain Plaintiff suffers from or in which parts of his body. Further, Dr. Jung's finding that Plaintiff needs to lie down or reline, specifically for 1–2 hours per day, is a response to a multiple-choice question—Question 10(a) on the form—and Dr. Jung cites no objective medical evidence and offers no supporting explanations in support of that particular finding. [AR at 976.] Thus, the Court finds that the ALJ properly considered and determined that Dr. Jung's opinion was not persuasive in terms of

supportability based on Dr. Jung's limited findings and explanations.

The Court also finds that the ALJ properly determined that "the extent of limitation that Dr. Jung suggests is inconsistent with the record . . . [as] the record fails to reveal that the claimant is as limited as Dr. Jung alleged." [AR at 23.] The ALJ went on to cites over a dozen of Plaintiff's other medical records in support of this finding. For example, one of Dr. Jung's findings was that Plaintiff has difficulty walking/abnormal gait. [AR at 971.] However, earlier treatment notes by Dr. Jung from March 2019 state that Plaintiff had a "normal gait." [AR at 836.] Further, the ALJ cited a long list of treatment records from Coastal Spine Mount Laurel, which unlike Dr. Jung's medical opinion, fail to reveal "any noted deficits in terms of alertness, orientation, motor function[,] or gait." [AR at 23.] Given that this finding is consistent with the Court's review of the record, the Court is convinced that the ALJ properly considered and determined that Dr. Jung's opinion was inconsistent with the record as a whole. Thus, the Court finds that the ALJ's determination that Dr. Jung's medical opinion lacked both supportability and consistency, and thus was unpersuasive, is supported by substantial evidence. Plaintiff's first argument fails.

**B.     The RFC Assessment in Light of Plaintiff's "Severe" Impairments**

Next, Plaintiff argues that despite determining that his degenerative disc disease (lumbar and cervical spine) and thoracic facture were "severe" impairments at step two, "the ALJ offers a bare bones RFC [assessment] of light work" with certain limitations, which "cannot reasonably be considered to encompass all of the

9

symptomology and limitations that are consistent with a finding that these impairments are severe or consistent with the Plaintiff's testimony regarding his ongoing limitations." [Plaintiff's Brief at 17–18.] The Court is mindful that in reviewing the ALJ's RFC assessment to determine if it is supported by substantial evidence, the Court is "not permitted to re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citations omitted). Thus, the Court is wary of Plaintiff's suggestion that the RFC assessment is facially inadequate to account for the symptomology of his two impairments determined by the ALJ to be "severe" at step two.

In fact, the ALJ limited Plaintiff to light work *only* in the RFC assessment (with certain additional restrictions[1]), which, by definition:

> …involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b). In her decision, the ALJ supported the RFC assessment with more than five single-spaced pages and cited to a voluminous extent of medical and non-medical evidence of record to explain why she set the parameters in the RFC assessment where she did. [AR 19–24.] In considering Plaintiff's symptoms, the Court finds that the ALJ also followed the requisite two-step process—first,

---

[1] Before turning to step four, the ALJ found that Plaintiff has the RFC "to perform light work . . . except: Occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Never climb ladders, ropes or scaffolds." [AR at 19.]

determining whether Plaintiff has an underlying medically determinable impairment(s) that could reasonably be expected to produce his pain/symptoms; and second, evaluating the intensity, persistence, and limiting effects of his symptoms to determine the extent to which they limit his work-related activities. [AR at 19.] Plaintiff's current challenge concerns the ALJ's determination at the second step of this process, specifically, the ALJ's finding that Plaintiff's "statements about the intensity, persistence, or functionally limiting effects of [his] pain or other symptoms are not substantiated by objective medical evidence" or other evidence of record. [*Id.*]

The Court rejects Plaintiff's contention that the ALJ blatantly dismissed "all of the Plaintiff's well supported complaints and allegations." [Plaintiff's Brief at 19.] The ALJ stated several times that "the record reveals a conservative, albeit multi-formed, course of treatment and generally normal, with only minimal, findings," and cited the relevant medical evidence that supported this conclusion. [AR at 19.] It is true that the ALJ discussed Plaintiff's decision to wait to get a recommended spinal surgery as a factor that "suggests that his symptoms are not as limiting as he alleged," a decision which Plaintiff attempts to explain he made for good reasons, including risks of surgery and insurance and financial concerns. [*Id.* at 20.] But deciding to forego spinal surgery is just one of many factors the ALJ provides in support of her decision. The ALJ went on to cite an extensive amount of Plaintiff's medical records and treatment notes from many different sources, including Mitchell Chiropractic Center and Lafferty Family Chiropractic, Coastal Spine, Atlanticare

Health System, Fellowship Surgical Center, Strive Physical Therapy and NovaCare Physical Therapy, and AdvoCare, among others. [AR at 20–21.] In summarizing the medical records from each of these different health care providers, the ALJ provides a similar analysis with respect to Plaintiff's medically determinable impairments, acknowledging treatment notes that show instances where Plaintiff's resulting symptoms from such impairments were observed, as well as other instances when Plaintiff's symptomology improved or was not observed. For example, the ALJ noted that the records from the Mitchell Chiropractic Center and Lafferty Family Chiropractic document findings of "spinal, piriformis, gluteal or hamstring area tenderness, pain or trigger points with tightness," as well as "spinal (cervical, thoracic, or lumbar) or rib subluxations." [AR at 20 (citations omitted).] However, the ALJ also acknowledged that at other times Plaintiff's symptoms were observed to be only "mild" or "normal," citing other treatment records from Mitchell Chiropractic Center and Lafferty Family Chiropractic that show "only sporadic examination findings of subjectively painful or decreased ranges of spinal (cervical or lumber) motion" or "only sporadic examination findings of spinal area muscle spasm," for example. [AR at 20 (*first citing* AR, Exhibits 11F/3, 9-15, 20, 32, 35, 78, 81, 15F, 7, 16F/63, 94; *then citing* 11F/15).]

    Not only does the ALJ thoroughly cite the relevant medical evidence to support her finding that Plaintiff is not as limited by his symptoms as he self-reported, but the ALJ also takes into consideration inconsistencies with Plaintiff's

12

own "actions and admissions." [AR at 20.] The ALJ notes that Plaintiff "reported laying down two hours a day," but at the same time reported that he has no problems completing daily tasks, participates in outside activities, drives, and "was observed to sit through the entire hearings and to not use any assistive devices" by the ALJ herself. [*Id.*] Plaintiff also argues that the ALJ "offers no credibility to the third party statements of Tom Kurz or Erica Rock." [Plaintiff's Brief at 20.] However, the ALJ confirmed in her decision that she considered and accounted for these statements, and this is all that is required by the regulations regarding such evidence. 20 C.F.R. § 404.1520c(d) (stating that the Commissioner is not "required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section").

The Court finds that the ALJ's RFC assessment includes substantial limitations directly relevant to Plaintiff's "severe" impairments of degenerative disc disease (lumbar and cervical spine) and thoracic fracture. The Court also finds that the ALJ included a detailed rationale in support of the RFC assessment that explains how the ALJ considered the extensive amount of medical and non-medical evidence of record, and that the ALJ's treatment of such evidence met the requirements under the applicable regulations. Thus, the Court will decline Plaintiff's invitation to re-weigh the evidence and finds that the ALJ's RFC assessment and supporting rationale are supported by substantial evidence.

### C. Plaintiff's Alleged Mental Health and Other "Non-Severe" Impairments

Plaintiff's final argument is that the ALJ erred in her treatment of Plaintiff's alleged mental health impairments of ADHD and depression. In his supporting brief, Plaintiff argues that "the ALJ erred by finding multiple impairments non-severe at step two, including the Plaintiff's medically determinable ADHD, depression, status post right-hand fracture, and status post tibia fibula fracture." [Plaintiff's Brief at 21 (*citing* AR 15–16).] However, the Court finds this argument is not persuasive. Because the ALJ found that multiple of Plaintiff's impairments were "severe" at the second step of the sequential analysis, which is a "*de minimis* screening device to dispose of groundless claims," the ALJ continued with the sequential evaluation process. *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). Thus, the Court finds that any error by the ALJ by not finding other of Plaintiff's alleged impairments to be "severe" at step two was harmless error.

Plaintiff goes on to argue that despite finding his ADHD and depression to be medically determinable impairments, "the ALJ provides no valid reason for rejecting any of the evidence of Plaintiff's mental health or the limitations consistent with the same." [Plaintiff's Brief at 22.] Plaintiff is correct that in formulating Plaintiff's RFC assessment, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" 20 C.F.R. § 404.1545(a)(2); S.S.R. 96-8p. However, that is exactly what the ALJ did here when she wrote in her decision that she had "reviewed and considered all severe and non-

severe impairments in formulating the residual functional capacity . . . and where appropriate, . . . included limitations to address the claimant's non-severe impairments and subjective complaints." [AR at 18.] The ALJ also dedicated almost two full single-spaced pages of her decision to discussing Plaintiff's ADHD and depression, and explained, at length, her finding that Plaintiff had only a mild limitation in two of the broad areas of functioning as measured by the "paragraph B" criteria. [AR at 16–18.] Among other findings, the ALJ determined that claimant's "actions and admissions reveal that he is not as limited as he alleged from a mental health standpoint" because he is able to perform a wide range of activities without issue, was able to participate at the hearings without any observed difficulties, and because the medical evidence of record "fails to reveal mental health treatment with a specialist, even at a free or community clinic" or that Plaintiff takes any medications for his mental health. [AR at 17.]

      The ALJ confirmed that she considered Plaintiff's alleged mental health impairments in formulating the RFC assessment, as well as discussed at length the insignificant evidence of record to corroborate Plaintiff's alleged resulting mental health symptomology. Courts recognize that no more is required of the ALJ in such circumstances. *See D.C. v. Comm'r of Soc. Sec.*, 2021 WL 1851830, at *6 (D.N.J. May 10, 2021) (Civ. No. 20-2484) (RBK) (explaining that "an RFC assessment does not need to contain in-depth analysis on mental impairments when the ALJ finds earlier in his opinion that a claimant's mental impairments are no greater than mild")

(citations omitted). Thus, the Court rejects Plaintiff's third and final argument and finds that the ALJ's treatment of Plaintiff's alleged mental health impairments is supported by substantial evidence.

## V.     **CONCLUSION**

The Court concludes that the ALJ's decision is supported by substantial evidence and that each of the arguments raised by Plaintiff on appeal are unpersuasive. For the foregoing reasons, the Court will **affirm** the decision of the ALJ. An accompanying Order as of today's date shall issue.

Date: May 27, 2022                                   s/Renée Marie Bumb
                                                     Renée Marie Bumb
                                                     U.S. District Judge